### FIRST NAT. BANK OF HERKIMER v. POLAND UNION.
#### No. 196.

Circuit Court of Appeals, Second Circuit.
Jan. 8, 1940.

James P. O'Donnell, of Herkimer, N. Y., for creditor-appellee.

Leonard W. Ferris, of Utica, N. Y., for debtor-appellant.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This appeal brings before us the plan of reorganization for Poland Union, a coöperative general store, which filed a voluntary 77B petition in 1935. 11 U.S.C.A. § 207. The District Court refused to confirm the plan, and the debtor appeals.

Poland Union was established by 123 citizens of Poland, New York, in 1926. The farmers, merchants, and bankers of the vicinity signed articles of association which recite that "This Association shall be a partnership limited to the term of ten years, from March 1, 1926," and elsewhere make reference to "this partnership." The subscribers became members of the association. Its funds consisted of subscriptions on "shares" of $20 each, the subscribers receiving the appropriate number of shares in the enterprise. No certificate was ever filed under any of the several New York statutes for business organization, and the legal position of the Poland Union in the area between joint stock company and partnership has never been determined. In 1936, we decided, reversing the district court, that the company possessed enough of the attributes of a joint stock company to permit the approval of a petition for reorganization under 77B. In re Poland Union, 2 Cir., 77 F.2d 855.

The major difficulty of the reorganization has been encountered in attempting to adjust the individual liability of the shareholders on their shares. The shareholders deny the existence of any such liability, and when the case was last before us, we did not think it necessary to decide that question. The plan now submitted for confirmation would dispose of the disputed individual liability as follows: The shareholders are to contribute about $17,850 in cash to a new corporation, and will receive stock in return. The $17,850 will be paid immediately to the creditors, who have proved claims totaling $83,825. The new corporation will then issue its notes to the creditors for an additional $20,000. Each creditor will also receive one share of common stock for each remaining $100 of his claim. The reorganization court is asked to issue a perpetual injunction restraining all creditors from proceeding against individual shareholders who have made cash contributions to the new corporation.

Several objections may be made to the fairness of this plan. It was accepted by over two-thirds of the creditors, but two of the largest accepting creditors happen to be shareholders as well, and they stand to profit considerably by a release of their disputed liability. In such circumstances, it may be doubtful whether they should be permitted to vote in the same class with other creditors not so intimately connected with the enterprise. Compare Taylor v.

Standard G. & E. Co., 306 U.S. 307, 59 S. Ct. 543, 83 L.Ed. 669; Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. ——; § 77B, sub. c (6); Ch. X, §§ 197, 203, 11 U.S.C.A. §§ 207, sub. c (6), 597, 603. Nor are we satisfied that proper attention has been paid to the principles of Northern Pacific R. v. Boyd, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931. There is no proof that the extensive participation of the shareholders in the new company is justified by their cash contribution. This cash contribution is supposed to have been made in satisfaction of a disputed liability asserted against these same shareholders. And we have no evidence that preservation of the shareholders' interest is necessary to the successful continuation of the business. See Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. ——.

The amount of cash furnished by the shareholders does not seem large enough to permit a finding that the plan is fair and equitable. The objecting creditor contends that some of the shareholders have more than sufficient means to satisfy all claims in full. The vigor with which the shareholders dispute their liability is not necessarily an excuse for permitting them to escape with a payment of 20 cents on the dollar. In view of the likelihood that individual liability does exist, the debtor should at least have determined whether the shareholders were financially in a position to pay more before offering this plan for approval.

These objections to the fairness of the plan are overshadowed by the question as to the power of a reorganization court to promulgate any such arrangement at all. The essence of the plan is a perpetual injunction restraining in personam suits against shareholders—a decree the reorganization court cannot make under the circumstances here present. Such an injunction would be tantamount to a discharge in bankruptcy. Yet the shareholders have filed no petition, they have not been subject to any examination, and their assets are not in judicial custody.

We are told that by regarding the shareholders as partners, a case may be made out for the propriety of an injunction. When a partnership has filed its petition in bankruptcy and the partners have not, the property of the individual partners may nevertheless be seized and administered by the partnership trustee. Francis v. McNeal, 228 U.S. 695, 33 S.Ct. 701, 57 L.Ed.

1029, L.R.A.1915E, 706. Since the partnership trustee is entitled to custody of these assets, he may presumably enjoin interference with this custody by creditors. Perhaps he may even be able to enjoin partnership creditors from attaching such property, though he has not and does not intend to take it into custody himself. If he may do this much, it is contended that, where the existence of individual liability is disputed, he may accept and administer part of the individual's property, leave the individual in possession of the rest, and enjoin all partnership creditors from suing the individual forever. This would be very similar to what was approved in Doty v. Love, 295 U.S. 64, 55 S.Ct. 558, 79 L.Ed. 1303, 96 A.L.R. 1438, except that there the right to enforce the liability of the shareholders was vested exclusively in the trustee, and not in the creditors.

We believe that this argument ignores fundamental distinctions between suits against the individual and levies on his property, as well as between the trustee's power to claim and administer the property of the individual partner and the trustee's power to control the claims of creditors against the partner individually. The latter power the trustee does not possess. The property of the partner is in many ways the property of the partnership, or at least the property of the trustee. Even this is not completely so, as Liberty National Bank v. Bear, 276 U.S. 215, 48 S. Ct. 252, 72 L.Ed. 536, teaches in upholding the acquisition of a judgment lien against a partner's property, notwithstanding the bankruptcy of the partnership within four months thereafter. Cf. also Myers v. International Trust Co., 273 U.S. 380, 383, 47 S.Ct. 372, 71 L.Ed. 692. But the creditor's right to an in personam judgment against the partner is not the property of the partnership, nor is it a right which can be enforced by the partnership trustee. The trustee is given some of the rights of an attaching creditor, but only those rights which are rights against property, in or out of the custody of the court. Bankruptcy Act, § 70, sub. c, 11 U.S.C.A. § 110, sub. c. The partnership trustee may perhaps prevent the creditor from levying upon or threatening the property of the individual partner, but the partnership trustee cannot prevent him from obtaining an in personam judgment against the individual partner. Cf. Riehle v. Margolies, 279 U.S. 218, 49 S.Ct. 310, 73 L.Ed. 669; Foust v.

Munson S. S. Lines, 299 U.S. 77, 57 S.Ct. 90, 81 L.Ed. 49. And when the partnership bankruptcy is wound up, and new property is subsequently acquired by the former partner, the creditor should be entitled to levy upon this property, at least until limitations intervene. For if the creditor is perpetually enjoined from obtaining his judgment, the partner has received a virtual discharge in bankruptcy.

It is undoubtedly anomalous and perhaps unfair that a partner may have all his assets seized by the partnership trustee, and yet be denied a discharge. But such was the intimation of Francis v. McNeal, supra, and with the exception of a few isolated cases, of which Abbott v. Anderson, 265 Ill. 285, 106 N.E. 782, L.R.A.1915F, 668, Ann. Cas.1916A, 741, pressed upon us at the argument, is perhaps chief, such has been the holding of the courts. Rowland v. Lovett, 45 Ga.App. 123, 163 S.E. 511; Bloyd v. Williams-Echols Dry Goods Co., 167 Ark. 644, 268 S.W. 618; Horner v. Hamner, 4 Cir., 249 F. 134, L.R.A.1918E, 465; In re Hale, D. C. E. D. N. C., 107 F. 432; cf. Meek v. Centre County Bkg. Co., 268 U.S. 426, 45 S.Ct. 560, 69 L.Ed. 1028; 1 Collier on Bankruptcy (14th Ed. 1940) par. 5.15. Such, too, is the clear direction of the new Chandler Act, which provides that the discharge of the partnership shall not operate to discharge the individual partner. § 5, sub. j, 11 U.S.C.A. § 23, sub. j.

No plan for Poland Union will be practicable unless suits against the shareholders are perpetually restrained. Since such restraint is beyond the power of a reorganization court, the order below must be affirmed.